IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAMS SERVICE GROUP, LLC
as successor to Williams Service
Group, Inc.,

   Plaintiff,

    v.

NATIONAL UNION FIRE
INSURANCE COMPANY OF
PITTSBURGH, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:09-CV-832-TWT

ORDER

This is a breach of contract action arising out of insurance policies issued by the Defendants. It is before the Court on the Defendants' Motion to Stay Execution of Judgment Pending Appeal [Doc. 117]. For the reasons set forth below, the Court GRANTS the Defendants' motion.

I. Background

This lawsuit arises out of a series of insurance contracts between Williams Service Group, LLC ("Williams") and four insurance companies (the "Defendants"). Between 1990 and 1997, the Defendants provided more than 45 workers' compensation and general liability policies to Williams. The primary insurance

relationship was defined by several agreements: the 1990-1995 policies, and the 1995-1997 policies, along with related schedules, policies, and Large Risk Rating Plan Endorsements (collectively, the "Program Agreements"). Under the Program Agreements, Williams was obligated to reimburse the Defendants for premiums, losses, and Allocated Loss Adjusting Expenses ("ALAE")[1] incurred in defending and administering claims.

Williams filed this suit on March 26, 2009, seeking a declaratory judgment, recoupment, and claims for negligence [Doc. 40]. Specifically, the Plaintiff alleged that the Defendants negligently supervised the adjustment of two workers' compensation claims. Further, Williams claimed that it overpaid $548,471 under the 1995-1997 policies. On April 8, 2009, the parties signed an agreement tolling the statute of limitations on all claims (the "Tolling Agreement") [Doc. 75-6]. On August 5, 2010, the Defendants filed a Second Amended Answer and Counterclaim seeking to recover $1,850,572.26 under the 1990-1995 policies and $166,662.26 under the 1995-1997 policies [Doc. 58]. The Defendants also sought to draw on letters of credit pledged as collateral under the Program Agreements.

---

[1] ALAE are defense costs related to claims under the Program Agreements. The Program Agreements set forth several formulas for calculating the percentage of ALAE reimbursable to the Defendants.

On June 17, 2011, the Court granted in part and denied in part the Defendants' Motion for Summary Judgment [See Doc. 110]. In that Order, the Court awarded the Defendants $530,088.30 for unpaid reimbursements under the Program Agreements [id. at 19]. The Court, however, held that the Defendants' claims for amounts paid under the Program Agreements more than six years prior to the Tolling Agreement were barred by the statute of limitations [id. at 18]. Finally, the Court reduced the amount of collateral that Williams was obligated to maintain to secure future debts [id. at 18-19].

On October 24, 2011, the Defendants filed a notice of appeal [Doc. 121]. On appeal, the Defendants argue that they are entitled to more than $2 million under the Program Agreements. Specifically, the Defendants contend that the statute of limitations does not bar them from drawing on letters of credit that were pledged under the Program Agreements.

On October 12, 2011, the Defendants filed a Motion to Stay Execution of Judgment Pending Appeal [Doc. 117]. In their motion, the Defendants request that Williams not be allowed to reduce its collateral obligation under the Program Agreements. The Defendants assert that if Williams disposes of the letters of credit pledged as collateral under the Program Agreements, the Plaintiff will be unable to satisfy an increased money judgment awarded on appeal.

II. <u>Discussion</u>

First, the Court must determine what standard applies to the Defendants' request for a stay. The Defendants contend that they are entitled to a stay as a matter of right under Federal Rule of Civil Procedure 62(d). "[A] party taking an appeal from the District Court is entitled to a stay of a money judgment as a matter of right if he posts a bond in accordance with Fed. R. Civ. P. 62(d) and 73(d)." <u>American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theaters, Inc.</u>, 87 S. Ct. 1, 3 (1966). By contrast, "[i]n the case of a non-money judgment, whether a stay is warranted under Rule 62(d) depends upon: (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." <u>Adams Offshore, Ltd. v. Con-Dive, LLC</u>, No. 09-0378, 2010 WL 4628026, at *2 (S.D. Ala. Nov. 3, 2010) (quoting <u>Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A.</u>, 210 F.3d 1309, 1313 (11th Cir. 2000)).

In <u>United States v. United States Fishing Vessel Maylin</u>, 130 F.R.D. 684 (S.D. Fla. 1990), a fisherman moved for release of his private fishing vessel. The district court granted the fisherman's request. The United States appealed and requested a stay of execution pending appeal. In its motion, the United States argued that it was

entitled to a stay as a matter of right under Rule 26(d). The district court, however, applied the four factor test quoted above. The court noted that "[s]tay as a matter of right lies where the judgment involved is monetary, because the bond serves to guarantee the judgment in kind with interest." Id. at 686. The court reasoned, however, that the "case differ[ed] from the situation of a money judgment in that the non-appealing party . . . [could not] be adequately compensated by any fiscal guarantee." Id. Indeed, "the Government [could not] and [would] not reimburse claimant for the lost use of his boat and the income that it [might have] produce[d] for him over the many months that its appeal [might have been] pending on the Circuit." Thus, "[t]he idiosyncracies of [the] case demand[ed] that the court apply the standard four-factor test to determine whether a stay [was] just and warranted." Id.; see also Venus Lines, 210 F.3d at 1313-1314 (applying four-factor test to motion to stay execution of judgment attaching shipping cargo).

In cases of money judgments under Rule 26(d), "the purpose of requiring a supersedeas bond pending appeal is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency." Olcott v. Delaware Flood Co., 76 F.3d 1538, 1559 (10th Cir. 1996). Thus, ordinarily, a judgment debtor may obtain a stay as a matter of right simply by posting a bond assuring that the judgment creditor will not be financially harmed by the stay.

Here, however, the judgment *creditor* has appealed. Indeed, in its June 17 Order, the Court awarded the movants $530,088.30 [See Doc. 110]. The Defendants, however, do not seek to stay enforcement of that portion of the judgment. Rather, the movants seek to prevent Williams from disposing of collateral that would secure additional damages. A stay, therefore, does not threaten the Defendants' money judgment. To the contrary, a stay will cause Williams–perhaps unnecessarily if the Defendants are unsuccessful on appeal–to bear the expense of maintaining the letters of credit while the appeal is pending. Indeed, Williams claims that it will face financial hardship each day it is forced to maintain the letters of credit.[2] The Defendants cannot adequately compensate the Plaintiff because they cannot be certain how long the appeal will remain pending. Thus, as in <u>United States Fishing Vessel</u>, "[t]his case differs from the situation of a money judgment in that the non-appealing party here cannot be adequately compensated by any fiscal guarantee." <u>United States Fishing Vessel</u>, 130 F.R.D. at 686. For this reason, "[t]he idiosyncracies of this case demand that the court apply the standard four-factor test to determine whether a stay is just and warranted." <u>Id.</u>

---

[2]Specifically, the Plaintiff asserts that it must bear "charges associated with maintenance of the [letters of credit] and the opportunity cost associated with the inaccessibility of the assets securing the [letters of credit]." (Pl.'s Br. in Opp'n to Defs.' Mot. for Stay, at 7-8.)

As discussed above, "[i]n the case of a non-money judgment, whether a stay is warranted under Rule 62(d) depends upon: '(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" <u>Venus Lines</u>, 210 F.3d at 1313 (quoting <u>Hilton v. Braunskill</u>, 481 U.S. 770, 776 (1987)); <u>see also</u> <u>Adams Offshore</u>, 2010 WL 4628026, at *7 ("[T]he [four-part] test articulated by the Supreme Court in <u>Hilton</u> applies under Rule 62(d) as well as under Rule 62(c).").

First, the movants have shown that they may succeed on appeal. In its Summary Judgment Order, the Court held that the Defendants could not draw on letters of credit pledged under Program Agreements [<u>see</u> Doc. 110]. In doing so, the Court distinguished <u>Hahn Automotive Warehouse v. American Zurich Insurance Co.</u>, 81 A.D.3d 1331 (N.Y. App. Div. 2011). Specifically, the Court concluded that the Defendants could not draw on the letters of credit without enforcing the Program Agreements. The statute of limitations, however, barred the Defendants from enforcing Program Agreements [<u>see</u> <u>id.</u> at 17-18]. Thus, "the Program Agreements establish[ed] the Defendants' right *and* the Defendants' remedy" [<u>id.</u> at 18]. This "right v. remedy" distinction is a close question. The Court of Appeals may decide

that the Defendants may draw on the letters of credit independently of the Program Agreements. Thus, the first factor does not weigh heavily in favor of either party.

Second, there is a threat of irreparable injury to the Defendants in the absence of a stay. If the Defendants succeed on appeal, they will be entitled to payments made more than six years before the Tolling Agreement. Williams, however, is not an active business. (Pl.'s Br. in Opp'n to Defs.' Mot. for Stay, at 7.) The Program Agreements were secured by letters of credit to ensure that Williams would have funds to satisfy the Defendants' reimbursement demands. Without the letters of credit, the Defendants may be unable to recover further damages, mooting the Defendants' appeal. Thus, the second factor weighs in favor of a stay.

Third, a stay will not substantially injure the Plaintiff. Williams contractually agreed to maintain the letters of credit as security for the Program Agreements and has done so for many years. Although Williams claims there are costs associated with maintaining the letters of credit, there is no indication that these costs will be unbearable. Further, if the Defendants' appeal is unsuccessful, the letters of credit will be returned to Williams. Thus, the third factor weighs is favor of a stay. Finally, the public has little interest in this private commercial dispute. This factor does not weigh in favor of either party. Balancing these factors, the execution of the judgment is stayed pending appeal.

### III. Conclusion

For the reasons set forth above, the Court GRANTS the Defendants' Motion to Stay Execution of Judgment Pending Appeal [Doc. 117].

SO ORDERED, this 8 day of December, 2011.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge